**Dated: January 13, 2015**

**The following is ORDERED:**



*TOM R. CORNISH*
*UNITED STATES BANKRUPTCY JUDGE*

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE:                                                 CASE NO. 13-81466– TRC
JEFFREY WILLIAM YANDIAN                CHAPTER 13

                           Debtor.

### ORDER REGARDING PROOF OF CLAIM 12-1

Before the Court is Proof of Claim 12-1 of Creditors Rodney Dale Black and Wesley Darrell Black, Debtor's Objection to this Claim (Docket Entry 28), and Response of Rodney Dale Black and Wesley Darrell Black (Docket Entry 35). The Court held an evidentiary hearing on this matter on August 7, 2014. The only witnesses were Debtor and Creditor Rodney Black. After the hearing, the parties attempted several times to resolve this dispute but were unsuccessful. They have each submitted proposed findings of fact and conclusions of law.

Rodney Black and his brother Wesley Darrell Black owned real estate located in Marietta Oklahoma, consisting of a residence and two acres. Rodney Black and Debtor entered into an "Agreement for Lease/Purchase" ("Agreement") regarding this real estate on March 1, 2004. The Agreement was drafted by Rodney Black. The parties did not have legal counsel review the Agreement nor advise them regarding this transaction. The Agreement identifies Rodney Black as "Seller," and Mr. and Ms. Jeff Yandian, as "Purchaser." Rodney Black signed the Agreement

for Lease/Purchase as "authorized agent." The Agreement states that the Purchaser desired to lease the property with an option to purchase. The monthly lease payment is $325.05. Pursuant to Exhibit A – Amortization Table, attached to the Agreement, the $325.05 payment includes $252.05 for principal and interest, $50.00 for taxes and $50.00 for insurance. The Agreement also provides"

> The Seller also agrees to provide Purchaser of said property a purchase option and will provide the financing for SIXTEEN THOUSAND DOLLARS AND NO CENTS (($16.000.00)) of total sale price of the property for a lump sum of THIRTY TWO THOUSAND DOLLARS AND NO CENTS (($32,000.00)). The Seller agrees to apply the principal on the monthly payments to the final purchase price, see attached schedule of payment, Exhibit A, for application of principal to the final purchase price. The Seller will provide the financing at an interest rate of SIX AND ONE HALF PERCENT ANNUALLY ((6-1/2%)).
>
> The Purchaser agrees to fund an "Option to Purchase" in the amount of SIXTEEN THOUSAND DOLLARS AND NO CENTS (($16,000)). The fee for the option shall be paid upon the signing of the Agreement or at the option of the Seller deferred until a later date as agreed between the parties in a separate document and will be credited to the final purchase price at the time the Agreement if (sic) finalized.

The Agreement further provides that Purchaser shall have full use of the subject property and may remodel the residence upon approval of plans by Seller prior to "implication (sic) of the work." Seller was to collect $100.00 for taxes and insurance but was to remit those payments to the proper authorities. Payments for taxes and insurance were to be deducted annually from the principal payments credited each year to the Purchasers account.

Debtor and his wife, Cheri Cornelia Yandian, resided on the subject property and made payments to Rodney Black. The Yandians recorded a "Notice of Contract" with the Agreement for Lease/Purchase attached, in the land records of Love County, Oklahoma, on November 21, 2011. In the Notice, Debtor identifies the Agreement for Lease/Purchase as the "Contract" and states that it was entered between him and his wife and Rodney Dale Black and Wesley Darrell Black, with Rodney Black acting on behalf of Darrell Wesley Black. The Notice of Contract contains the legal description of the subject real estate in Love County, and states: "The Yandians claim an interest in and to the above described real property by virtue of said Contract." In 2012, Debtor filed an action in state court against the Blacks, presumably involving this lease/sale transaction, although the nature of the lawsuit was not revealed to this Court.

Debtor filed his Chapter 13 bankruptcy on December 3, 2013. He listed this property on Schedule A as his homestead, and as exempt property on Schedule C, with a value of $32,000, and a secured claim of Rodney and Wesley Black of $9,500. On Schedule D, he lists the Blacks as having a general, secured claim of $9,500. He did not list the Agreement for Lease/Purchase as executory on his Schedule G; however, he does list an apartment lease in Oklahoma City for $550 per month. On Schedule J, Debtor lists rental or home ownership expenses for his residence (including first mortgage payments and any rent) as $550, with $0 for real estate taxes, and $200 for property, homeowner's, or renter's insurance.. His Chapter 13 plan included the $9,500 secured claim of Rodney and Wesley Black, interest rate of six (6) percent, with a monthly payment of $184.50 for this claim.

Debtor used this district's standard plan form. Creditors are mailed a copy of the Plan Summary along with a one page "Notice to Creditors Regarding Chapter 13 Plan," which includes a notice to creditors of their right to object to the plan and a warning that if they do not object, the Court may confirm the plan as filed. This Notice also states that creditors should consult the Court's website, Debtor's attorney or the Chapter 13 Trustee to obtain and review the full plan. The first paragraph of the plan states:

> **NOTICE TO CREDITORS: YOU SHOULD READ THIS PLAN. EACH PARAGRAPH CONTAINS INFORMATION AND TERMS WHICH MAY AFFECT YOUR RIGHTS, INCLUDING YOUR RIGHT TO PAYMENT OF YOUR CLAIM AND RETENTION OF YOUR LIEN RIGHTS OR SECURITY INTEREST. FAILURE TO OBJECT TO CONFIRMATION OF THIS PLAN OR FAILURE TO TIMELY FILE A PROOF OF CLAIM MAY RESULT IN THE LOSS OF YOUR SECURITY INTEREST OR RIGHT TO PAYMENT. YOU SHOULD CONSULT AN ATTORNEY FOR LEGAL ADVICE.**

Debtor listed the Black's claim as a Class I.A. claim. This class is defined as follows in the plan: "the Allowed Class I.A., I.B. or I.C. Secured Claim shall be the lesser of the amount claimed secured by any creditor in its timely filed proof of claim or the amount provided for a Class I.A. Secure Claim in the Summary of the Plan. The Court may disallow that portion of any Class I.A. Secured Claim filed after confirmation in excess of the amount provided for in the Summary of Plan." By contrast, a typical

Case 13-81466   Doc 60   Filed 01/13/15   Entered 01/13/15 14:12:23   Desc Main
Document      Page 3 of 10

mortgage payment is a Class II.A continuing payment claim, also referenced as a § 1322(b)(5) claim in Section 5 of the plan. No claims for pre-petition arrearages were included in Debtor's plan.

Section 3(B) of the plan, regarding collection, claims, discharge, issue preclusion, etc., further provides:

> The provisions of this Plan, upon confirmation, bind each creditor whether or not such creditor has objected to, has accepted, or has rejected the plan. Confirmation of the Plan or any Order respecting a creditor's secured or unsecured claim shall not prohibit the Debtor(s) or the Trustee from filing any action against said creditor as set forth in Paragraph L below. The Plan does not provide for treatment to any creditor that is contrary to law as of the date of confirmation. The Plan does provide for treatment to creditors that may be consistent with any majority or minority view of unsettled law. It is the intention of this plan to resolve any such issue through confirmation of this plan.

The Blacks did not file an objection to the Plan. The Plan was confirmed for a term of sixty (60) months on February 11, 2014.

The Blacks filed a timely proof of claim on April 4, 2014. The proof of claim was for $35,148.05, identified as secured by a note and mortgage on Debtor's homestead, interest rate of 6.5% fixed, and valued the real estate at $62,609. Form B10, Mortgage Proof of Claim Attachment for claims secured by a security interest in debtor's principal residence, was not included. Debtor objected to this proof of claim as to the amount, stating that the balance shown was inaccurate, that the interest rate was not accurately calculated, and demanded an accounting from the Blacks as to how the amount of their secured claim was calculated.

During the hearing before this Court, Debtor testified that he made payments to Rodney Black's bank account for which he was not given credit. The evidence he submitted to support these payments were carbon copies of checks he wrote. However, not all bank records were submitted to support that these carbon copies were actually processed and paid out of his account to Black. Both parties prepared and submitted summaries which they testified reflected amounts paid. Debtor asked the Court to give him credit for certain payments he claimed to have made to Black but for which Black failed to give him credit. Debtor did not dispute the amounts credited toward the first $16,000; however, he stated that Black's figures did not include all payments he made. At trial, he did not identify the total amount of

payments he believes were not credited to his account. He also represented to this Court that he intended to pay the Blacks' claim in full over the life of the plan.

Black testified that Debtor's payments were sporadic, that there were many months where he made no payment, that no payments have been made since 2011, and that he paid all the insurance and property tax payments himself. He then deducted those insurance and tax payments from the principal amount credited each year, according to the terms of the Agreement. He stated that the second $16,000 was not paid upon execution of the Agreement in 2004, so the parties were to enter into a separate agreement regarding its terms for payment. He stated that he and his brother agreed to finance the first $16,000 but not the second $16,000, and he drafted the Agreement accordingly. No documents were submitted to support the amounts Black claimed he paid for property insurance or real estate taxes. Black prepared several spreadsheets for use as trial aids in the state court case, and a "summary aid" which he offered to this Court to support the amount listed in his proof of claim. He did not keep contemporaneous records of amounts Debtor paid to him, however, he said he did account for those payments within the month they were made. He used a computer-based amortization schedule for applying payments to principal and interest, and for totaling what Debtor owed. No bank records were submitted in support of his spreadsheets. He testified that Debtor still owed him $ $19,148.05 on the first $16,000 which he financed at six and one half (6.5) percent interest, plus the second $16,000 "option to purchase" for a total of $35,148.05.

After the hearing, the parties submitted proposed findings of fact and conclusions of law. Relying upon the Agreement and Exhibit A, the Amortization Schedule attached thereto, Debtor suggests that he is obligated to pay $16,000 at 6.5% interest for a term of five and one-half years or 66 months. He calculates that by multiplying the monthly principal and interest amount of $252.05 by 66 for a total of $16,635.30. He calculates that he also contracted to pay $100 each month for taxes and insurance, and that, for purposes of valuing the Blacks' claim prepetition, this obligation is for 118 months (from the date of the Agreement, March 2004, through the date of filing, December, 2013) for a total of $11,800.00.

Finally, he suggests that he owes an additional $16,000.00 for the "Option to Purchase" portion of the Agreement. He claims this should be paid without interest since the Agreement does not provide for an amount. Debtor suggests that his bank records reflect he paid the Blacks a total of $21,240.00 prepetition. Thus, Debtor calculates that he owed the Blacks a total of $44,435.30 prepetition, less payments made of $21,240.00, and that the Blacks claim should be calculated to be $23,195.30.

The Blacks' proposed findings and conclusions suggest that the Agreement was only a lease as no option to purchase was exercised. They calculate the amount owed several different ways. As a lease only, Dor owed $352.05 a month for 66 months – based upon the Amortization Schedule – for a total of $27,459.90. Dor paid $17,700.00. Pursuant to a computer program used to input payments and calculate current status of the account, the Blacks calculate that Dor still owes $19,148.05 on the first $16,000 due under the lease. The Blacks calculate the total owed on the lease/purchase of the property to be $35,148.05 plus interest of 6.5%. This total is derived by adding the amount still owing on the first $16,000 - $19,148.05 – and the option to purchase amount of $16,000.

Before this Court proceeds to decide this dispute, it must comment on the mess these parties have created. The Court observes that, at best, the Agreement is inartfully drafted. It is unclear what status and rights the Blacks actually have in the subject real estate. Mr. Black testified that he and his brother own this property, yet the Agreement does not bear the signature of Wesley Darrell Black. No evidence was presented of Rodney Black's authority to act on behalf of his brother. The Agreement makes no reference to whether the Blacks' will convey the property to Debtor and his wife upon completion of all payments. The Agreement was not recorded in the land records until approximately seven years after its execution. Mr. Black testified that the first $16,000 was to be paid within six and one half years, yet that term is not included in the Agreement itself, it is found in Exhibit A. Black acted as if this was a mortgage, not a lease, as he attempted to apply payments to principal and interest, and attached an amortization schedule to the Agreement. Debtor urges the Court to construe any ambiguities against the Blacks, as Rodney Black drafted the Agreement. The parties requested that this Court interpret and apply the terms of the Agreement as written, and only calculate the amount of the Blacks' secured claim. They

acknowledged that some parts of the Agreement may be confusing, but they reminded the Court of its duty not to look beyond the four corners of the written document. Thus, the Court will do its best to follow that advice.

Compounding the confusing language of the Agreement is the record-keeping by both parties of the payments, taxes and insurance costs, and application of payments. Debtor supplied carbons of checks he supposedly wrote, but not the corresponding bank statements confirming that the checks were deducted from his account or transferred directly to the Blacks' bank account. Black testified that he did not keep contemporaneous records, and he submitted exhibits regarding his calculations of what Debtor paid and how Black applied those payments that were prepared for litigation. He also stated that when he paid taxes and insurance, he deducted that amount from what he had previously credited Debtor against the principal owed. However, it appears to the Court that per Exhibit A the monthly taxes and insurance payments were more like an escrow account that the Blacks would draw from to pay taxes and insurance when due. After submitting a proof of claim for a secured claim for $35,148.05, the Blacks now claim that this is really just a lease. It is unclear to the Court whether the Blacks are claiming they are owed $19,148.05 on a lease or $35,148.05 plus interest on the note and mortgage as listed on their proof of claim.

The Court also notes that the Blacks did not file an objection to confirmation of the plan. Pursuant to §1327(a), the provisions of a confirmed Chapter 13 plan bind the debtor and each creditor who has notice of the plan: "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. §1327(a); *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269 (2010). This Court's order confirming Debtor's plan was a final judgment from which no appeal was taken. *See In re Woolsey*, 696 F.3d 1266, 1269 (10th Cir. 2012)(Confirmation

of a plan "'is as close to *the* final order as any the bankruptcy judge enters.'"(emphasis in original; citation omitted).[1]

The Blacks received notice of the filing of this case and the contents of Debtor's plan, including his claim of ownership, claim of exemption, valuation of the property, valuation and classification of their claim as secured, and the treatment of the claim under the plan. Notice was given to the Blacks' attorney. The attorney who was served with the notice of the plan and the summary was the same attorney who filed the proof of claim on behalf of the Blacks. This Court's confirmation hearing on Debtor's plan was set and held prior to the deadline for filing proof of claims, in accordance with §1324(b). Thus, there appears to be no infirmity in the order confirming plan on the basis of violation of due process. *In re Woolsey*, 696 F.3d at 270-71.

However, the claims deadline occurred after the confirmation hearing. The Blacks proof of claim was filed before that deadline, but not before confirmation. Section 1322(b)(2) prohibits the modification of rights of a secured creditor whose claim is secured by a security interest in real property that is debtor's principal residence. Debtor never disputed the fact that the Blacks claim a security interest in this real property. The Blacks' claim is treated as secured by the Debtor's homestead in the plan, to be paid in full through the plan. Through their testimony, actions, bankruptcy petition and schedules, and the confirmed plan, the parties treat the Blacks as holding a claim secured only by real estate that is Debtor's principal residence. Despite the Blacks' Proposed Findings of Fact and Conclusions of Law that suggest this was only a lease, the parties both testified that their intent was that this was a sale of the real estate from the Blacks to the Yandians, with the Blacks financing half of the purchase price, and the other half to be paid by the Yandians at a later date under terms set forth in a separate document.

Further evidence that this was to be a sale and mortgage of the property, rather than a lease, is

---

[1] "After *Espinosa,* a 'creditor or other party in interest who chooses to sleep on its rights by not objecting to a plan does so at its own peril and as long as due process requirements are met, will be bound by it.' *In re McLemore,* 426 B.R. 728, 744 (Bankr. S.D.Ohio 2010) (citation omitted) (emphasis added).'' *In re Monahan,* 497 B.R. 642, 651 (B.A.P. 1st Cir. 2013).

Case 13-81466   Doc 60   Filed 01/13/15   Entered 01/13/15 14:12:23   Desc Main
Document      Page 8 of 10

found in the Agreement's specific procedure regarding default. If the Purchasers defaulted, their payments were to be treated as lease payments instead of payments applied to the purchase price. No evidence was presented to suggest that the Blacks followed that procedure or requested that the Yandians vacate the property. Black continued to apply payments toward the principal and interest. The Yandians have been in continuous possession of this property since the Agreement was executed. Under Oklahoma law, a contract that is made "with the intention of receiving the payment of money and made for the purpose of establishing an immediate and continuing right of possession" is known as a contract for deed, and is deemed to be a mortgage. Okla. Stat. tit. 16, §11A; *see also In re Kampman Farms, Inc.*, 6 B.R. 653 (Bankr. W.D. Okla. 1980).

Considering all these factors, the Court finds that the Blacks' claim as of the date of filing is $29,759.90. The Court calculates this amount by referring to the original Amortization Schedule, attached as Exhibit A to the Agreement. Debtor was obligated to pay $16,000 at 6.5% interest over a term of six and one-half years, which is 78 months. The monthly payments for principal and interest are $252.05; when multiplied by 78 months this totals $19,659.90 due on the first $16,000.00. As Debtor suggests, the obligation to pay insurance and taxes on the real estate ($100 a month) would continue beyond the amortization term up to the date the bankruptcy was filed, which is 118 months. The total owed for insurance and taxes or $100 a month for 118 months is $11,800.00. Debtor also owes $16,000 for the remainder of the "lump sum" total sale price of $32,000. Since there is no agreement regarding interest, the Court declines to award interest on the $16,000 remainder. Thus, as calculated by the Court, Debtor's obligation prepetition is $19,659.90 (principal and interest),$11,800.00 (taxes and insurance) and $16,000.00 (second installment of sales price), for a total of $47,459.90. The Court further finds that Rodney Black's testimony regarding the amount of payments made is more credible than Debtor's. It therefore finds that Debtor paid $17,700.00 to the Blacks prepetition, and should be given credit for that amount. The remainder owed to the Blacks on their proof of claim is $29,759.90.

Debtor is directed to file a modified plan consistent with the terms of this decision by the date set forth below. Debtor is also directed to provide for the payment of postpetition taxes and insurance. If the

modified plan is confirmed by this Court, then, at the conclusion of the plan term and after Debtor has successfully completed all payments in accordance with the terms of the confirmed modified plan, the Court assumes that Debtor and his wife will have met their obligations under the Agreement and the Blacks will formally transfer title to them.

  IT IS THEREFORE ORDERED that the Blacks' claim is allowed in the amount of $29,759.90.

  IT IS FURTHER ORDERED that Debtor shall file a motion to modify and modified plan consistent with the terms of this Order on or before January 23, 2015.

###